IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

B.G., a minor, by and through his parent and
next friend, L.G. and J.A., a minor, by and
through his parent and next friend, S.A.,

     Plaintiffs,

v.                                                           No. 1:14-CV-01047-RB/LF

RATON BOARD OF EDUCATION,
DAVID WILLDEN, in his individual and official capacities,
PAUL MALANO, in his individual and official capacities,
GILBERT SAN ROMAN, in this individual capacity,
ALBERT ORTIZ, in his individual capacity, and
JUSTIN MALANO, in his individual capacity,

     Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Alter or Amend the Judgment filed on July 5, 2016 (Doc. 133). Jurisdiction arises under 28 U.S.C. § 1331.

On June 8, 2016, the Court granted Defendants' motions for summary judgment as to Plaintiffs' claims arising under 42 U.S.C. § 1983 and Title IX, 20 U.S.C. §§ 1681–88. (*See* Doc. 131.) Having dismissed Plaintiffs' federal claims, the Court declined to exercise pendant jurisdiction over Plaintiffs' state claims and dismissed them without prejudice. (*See id.* at 25.) Plaintiffs now move the Court to amend its judgment, and in support thereof allege the Court erred in not automatically granting them the opportunity to present countervailing evidence after Defendants filed their supplemental reply, by relying on evidence viewed in a light most favorable to Defendants, and in misapprehending either Plaintiffs' position or the controlling law with

respect to Plaintiffs' Title IX claims. (*See* Doc. 133, at 1–2.) Having considered the submissions of counsel and relevant law, the Court will **DENY** the motion.

I.     **Procedural and Factual Background**

Plaintiffs B.G., by and through his next friend L.G., and J.A., by and through his next friend S.A., (collectively "Plaintiffs") sued the Raton Board of Education (Board), former Superintendent David Willden, Assistant Superintendent Paul Malano, Coach Gilbert San Roman, Assistant Coach Albert Ortiz, and Spanish teacher and track coach Justin Malano. (Doc. 1; *see also* Doc. 33 (Am. Compl.).) Plaintiffs allege claims pursuant to 42 U.S.C. § 1983, Title IX, 20 U.S.C. §§ 1681–88, and the New Mexico Tort Claims Act, §§ 41-4-5 and 41-4-6. (Am. Compl.) Defendants moved for summary judgment on J.A.'s claims and to dismiss the rest of the amended complaint. (Docs. 97, 96.) Plaintiffs responded with a request that the Court convert Defendants' motion to dismiss to a motion for summary judgment. (Doc. 114 at 3.)

The Court provided formal notice that it would convert Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rule 12(b)(6) to a motion for summary judgment and gave Defendants 15 days to file a supplemental reply. (Doc. 127.) The Court did not automatically grant Plaintiffs the opportunity to respond to Defendants' supplemental brief, nor did it foreclose it. (*See id.*) Defendants filed their supplemental reply on June 1, 2016. (Doc. 128.)

Plaintiffs never sought an opportunity to respond after Defendants filed their supplemental reply, either by motion or during the June 3, 2016 telephonic pretrial conference. (*See* Doc. 130.) On June 8, 2016, the Court granted both Defendants' Motion for Summary Judgment Against Plaintiff J.A. (Doc. 96) and Defendants' converted motion for summary judgment (Doc. 97) as to the first, second, and third causes of action in the Amended Complaint. (*See* Doc. 133.) The Court

dismissed Plaintiffs' fourth and fifth causes of action (the pendant state claims) without prejudice. (*See id.* at 125.)

The Court provided a summary of the pertinent facts in a light most favorable to Plaintiffs in its original Memorandum Opinion and Order and incorporates those facts herein. (*See* Doc. 131, at 2–11.) Plaintiffs submitted approximately 42 more pages of documents as exhibits with their current motion. (*See* Docs. 133, 134-1 through -8.) Out of an abundance of caution (*see* Section III(A) *infra*), the Court will supplement its original statement of the facts as necessary throughout the body of this opinion. The Court will view all facts in a light most favorable to Plaintiffs.

## II.     Legal Standards

### A.     Motion to Alter or Amend Judgment Standard

A motion to alter or amend judgment pursuant to "rule 59(e) is an 'inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.'" *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1218 (D.N.M. 2014) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (quoting *Servants of Paraclete*, 204 F.3d at 1012 (internal citation omitted)). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* (quoting *Servants of Paraclete*, 204 F.3d at 1012). "A district court has considerable discretion in ruling on a motion to reconsider under rule 59(e)." *Id.* (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)).

### B. Summary Judgment Standard

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it may influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if a reasonable trier of fact could return a verdict for either party. *Id*. To apply this standard, courts "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Gross v. Hale-Halsell Co.*, 554 F.3d 870, 875 (10th Cir. 2009) (quotation and internal citations omitted). In cases where the moving party will not bear the burden of persuasion at trial, the movant bears the initial responsibility of identifying "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If shown, the burden shifts to the non-movant. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). "[T]he nonmovant must make a showing that, 'if reduced to admissible evidence,' would be sufficient to carry the nonmovant's burden of proof at trial." *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1526 (10th Cir. 1992) (quoting *Celotex*, 477 U.S. at 327).

### III. Analysis

Plaintiffs allege three points of error with the Court's June 8, 2016 opinion: (1) "Plaintiffs were not provided a full and fair opportunity to meet Defendants' allegations with countervailing evidence and support"; (2) "The Court's determination that Defendants[] did not violate Plaintiffs' rights erroneously relies on facts viewed in the light most favorable to Defendants . . . and demonstrates a misapprehension of the facts"; and (3) "Under its Title IX analysis, the Court's reliance on the reasonableness of the Board's actions to address the harm it knew Plaintiffs suffered

is a misapprehension of controlling law or of Plaintiffs' position that alternative theories of Title IX liability apply." (Doc. 133 at 5–23.) The Court will address Plaintiffs' arguments in order.

        **A.**        **The Court will consider Plaintiffs' new arguments and evidence.**

"A court must convert a motion to dismiss into a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court,' and 'all parties . . . [must be] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" *Sawyer v. USAA Ins. Co.*, 912 F. Supp. 2d 1118, 1132 (D.N.M. 2012) (quoting Fed. R. Civ. P. 12(d)). "A party is considered to have adequate notice that a motion to dismiss under 12(b)(6) has been converted to a motion for summary judgment when that party is the one whose submission of documents outside of the pleadings triggered the conversion." *Id.* "Normally, notice and opportunity to present material must be given of such a conversion." *Id.* (citing Fed. R. Civ. P. 12(d)). "If 'the non-moving party is the party introducing the additional material and the Court is nonetheless granting summary judgment to the moving party . . . notice is not necessary.'" *Id.* (quoting *Chavez–Rodriguez v. City of Santa Fe*, No. CIV 07–0633, 2008 WL 5992270, at *20 n. 7 (D.N.M. Oct. 17, 2008) (*rev'd on other grounds*, 596 F.3d 708 (10th Cir. 2010); citing *Burnham v. Humphrey Hosp. Reit Trust, Inc.*, 403 F.3d 709, 713–714 (10th Cir. 2005) ("noting that a plaintiff is not prejudiced when a defendant's motion to dismiss is converted to a motion for summary judgment, when the plaintiff's 'opposition to the motion to dismiss first introduced affidavits containing facts beyond those in the complaint'")).

In *Burnham*, the defendants filed a motion to dismiss, and the plaintiff "introduced affidavits containing facts beyond those in the complaint" in her response. 403 F.3d at 714 (citation omitted). The defendants then attached affidavits to their reply brief only "to counter those of" the plaintiff. *Id.* (citation omitted). The Tenth Circuit held that because the plaintiff "had the

5

opportunity to introduce evidence that was not contained in the complaint," she "was not prejudiced by converting the motion to dismiss to a motion for summary judgment[,]" even though the court gave no notice of the conversion. *Id.* at 713–14 (citing *Lamb v. Rizzo*, 391 F.3d 1133, 1136 n.3 (10th Cir. 2004) (internal citation omitted)).

The facts in *Burnham* are analogous to those here: Plaintiffs submitted matters outside of the pleadings with their response to Defendants' motion to dismiss and asked the Court to convert the motion to one for summary judgment. (*See* Doc. 114 at 2–3.) Defendants opposed Plaintiffs' motion, but requested that the Court allow them "to file a supplemental reply to refute Plaintiffs' alleged material facts" if the Court granted Plaintiffs' motion. (Docs. 123, at 5 n.4; 127, at 1.) The Court granted Plaintiffs' request and allowed Defendants time to submit a supplemental reply. (*Id.* at 2.)

In their original response to Defendants' motion to dismiss, Plaintiffs asked the Court for "the opportunity to supplement [their] response" if the Court converted the motion to one for summary judgment. (Doc. 114 at 3.) Plaintiffs' request to file a supplemental response was premature. Plaintiffs essentially sought leave to file a surreply, a "brief[] that a party opposing a motion files after the movant files his or her reply . . . ." *See Navajo Health Found.-Sage Mem'l Hosp., Inc. v. Burwell*, 110 F. Supp. 3d 1140, 1180 (D.N.M. 2015). "Local rule 7.4(b) provides: 'The filing of a surreply requires leave of the Court.'" *Id.* (quoting D.N.M. LR–Civ. 7.4(b)). "A surreply is appropriate and should be allowed where new arguments are raised in a reply brief." *Id.* (quoting *Walker v. THI of N.M. at Hobbs Ctr.*, No. CIV 09–0060 JB/KBM, 2011 WL 2728344, at *1 (D.N.M. July 6, 2011) (internal citation omitted)). Plaintiffs sought to file a surreply before Defendants filed a supplemental reply brief; they could not have known whether Defendants would raise new arguments in their supplemental reply. In contravention of local rules, Plaintiffs did not

seek leave to file a supplemental response after Defendants filed their supplemental reply, either in writing or verbally during the pretrial conference when the Court said it would have an opinion out soon. (*See* Doc. 130 at 2.) Notwithstanding this fact, the Court will consider Plaintiffs' arguments and newly submitted evidence out of an abundance of caution.

      **B.    The Court's decision pursuant to Plaintiffs' 42 U.S.C. § 1983 claims stands.**

Plaintiffs argue that the Court misapprehended the facts and did not view the facts in a light most favorable to Plaintiffs in determining that Defendants were not liable under 42 U.S.C. § 1983. (Doc. 133 at 7.) Plaintiffs specifically take exception to the Court's findings under the danger creation analysis with respect to Defendants San Roman, Ortiz, and J. Malano. (*Id.* at 8–15.)

State actors are generally only liable "under § 1983 for their own acts, not the acts of third parties." *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008). One exception to this rule is the danger creation exception, which applies "when 'a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, [or] danger from private violence.'" *Robbins*, 519 F.3d at 1251 (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)). To qualify for this exception, a plaintiff must satisfy six requirements:

> (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

*Id.* (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1182–83 (10th Cir. 2002) (alterations in original) (internal citation omitted)). Notably, "allegations of . . . 'doing nothing' do not give rise to" a danger creation claim. *Id.* at 1252.

Plaintiffs take issue with many of the Court's findings, but the Court will focus on allegations relevant to the fifth requirement under the danger creation exception: whether

Defendants acted recklessly in conscious disregard of the risk of harm to Plaintiffs. *See id.* at 1251. To impose liability, Plaintiffs must demonstrate that Defendants "recognize[d] the unreasonable risk and *actually intend[ed]* to expose [Plaintiffs] to such risks without regard to the consequences to" Plaintiffs. *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003) (quotation omitted)). The Court held that Plaintiffs could not make such a showing, in that Defendant "San Roman's intervention indicates that he did not intend to put B.G. at risk of harm in the first place[,]" and Defendant J. "Malano's laughter . . . fails to rise to the level of reckless intent to expose [Plaintiffs] to harm." (Doc. 131 at 18.) Plaintiffs contend the Court could only have come to such a conclusion by viewing the facts in a light most favorable to Defendants. (Doc. 133 at 10.) Plaintiffs advance several arguments in support of their position, the Court will address them in turn.

First, with respect to Defendants San Roman and Ortiz, Plaintiffs argue that because a reasonable jury could find "Defendants were put on notice that there was an obvious or known risk of immediate and proximate harm," the Court should have also found recklessness or deliberate indifference to that risk.[1] (*Id.*) Plaintiffs do not offer additional evidence or cite to controlling authority to support their argument. (*See id.*)

The Court, however, fully explained the reasoning behind its decision: courts evaluate intent by examining any "efforts to provide protection to the victim, even when those efforts are inadequate." (Doc. 131 at 17.) The Court found that, much like the principal in *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1230 (10th Cir. 1999) who "sought to provide

---

[1] The Court found that Plaintiffs satisfied the fourth requirement of the danger creation exception, because "the coaches ignored an obvious or known risk by requiring [Plaintiffs] to ride home on the bus while they sat at the front of the bus and disregarded all activity behind them." (Doc. 131 at 16–17.) The obvious risk of harm did not come from previous incidents of petty bullying, but only after the coaches heard "the team start[] yelling, laughing loudly, and making groaning noises . . . ." (*Id.* at 17.)

8

protection" to a student who had been assaulted in a bathroom, Defendant San Roman stepped in to stop both the first and second incidents perpetrated on Plaintiffs. (*Id.* at 17–18 (discussing *Sutton*, 173 F.3d at 1230).) Defendant San Roman's intent matters: "[e]ven if [D]efendants acted negligently in" failing to protect Plaintiffs from the outset, "the Due Process Clause protects against '*deliberately* wrongful government decisions rather than merely negligent government conduct.'" *Christiansen*, 332 F.3d at 1281 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (internal citation omitted)). The Court is unpersuaded by Plaintiffs' arguments.

Second, Plaintiffs argue that Defendant J. Malano's conduct in laughing when he heard from students that B.G. was "raped" or "teabagged" "indicated reckless action in conscious disregard for the risk" of harm to B.G. (Doc. 133 at 12.) Again, however, this is an argument Plaintiffs made in their original response to Defendants' motion (*see* Doc. 114 at 25–26, 34–36), and Plaintiffs add no new evidence or controlling authority to dissuade the Court from its original findings. Plaintiffs are unable to show Defendant J. Malano intended any harm to come to B.G., and it is particularly relevant that "he was the first person to report the incident to the administration." (Doc. 131 at 18 (citation omitted).) The Court's decision stands.

Finally, Plaintiffs argue they have demonstrated that all three Defendants were deliberately indifferent in that they failed to report the incident to school administration for almost one week. (Doc. 133 at 13.) But Plaintiffs' argument and the evidence they proffer in support are unconvincing. (*Id.* (citing Doc. 115, Exs. 3, 6, 15; Doc. 133, Exs. 3–5).) Plaintiffs cite to *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 645 (1999), for the proposition that "deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." (Doc. 133 at 13 (citing *LaShonda D.*, 526 U.S. at 645 (internal citations omitted)).) In *LaShonda D.*, one high school student sexually harassed another student over a

9

period of approximately six months. 526 U.S. at 633–34. "[T]he bulk of [the] misconduct . . . took place in the classroom" *id.* at 646, and the student reported each of the multiple incidents of harassment to both the classroom teacher and the principal; yet, "at no point during the many months of his reported misconduct was [the student] disciplined for harassment." *Id.* at 633–35. *LaShonda D.* is clearly distinguishable from the facts here. Defendant San Roman stopped the incident when it occurred, Defendant J. Malano reported the incident—albeit almost one week later, and the students were disciplined for their misconduct. Plaintiffs have simply not demonstrated facts necessary to meet the deliberate indifference standard.

Plaintiffs have presented no new evidence or authority to show that Defendants' conduct was anything more than negligence. "A Rule 59(e) motion must be made upon grounds other than a mere disagreement with the court's decision and must do more than rehash a party's former arguments that were rejected by the court." *Estate of Herrick v. United States*, No. 2:12CV671DAK, 2016 WL 2939145, at *1 (D. Utah May 19, 2016) (citing *Resolution Trust Corp. v. Greif*, 906 F. Supp. 1446, 1456–57 (D. Kan. 1995) ("A party cannot invoke Rule 59(e) to raise arguments or present evidence that should have been raised in the first instance or to rehash arguments previously considered and rejected by the court.")). Plaintiffs' motion is not well-taken on the issue of the Court's decision pursuant to 42 U.S.C. § 1983 and will be denied. Because the Court will deny Plaintiffs' motion based on this issue, it need not consider Plaintiffs' arguments with respect to the remaining requirements of the danger creation exception.

**C.     The Court's decision with respect to Plaintiffs' Title IX claims stands.**

Plaintiffs allege the Court misapprehended the law regarding Title IX liability. (Doc. 133 at 15–23.) First, Plaintiffs argue their Title IX claims should remain because there is evidence "that a single school administrator with authority to take corrective action responded to harassment with

deliberate indifference." (*Id.* at 16 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (internal citation omitted)).) Plaintiffs contend that the conduct of Defendants San Roman, Ortiz, J. Malano, and Willden, "individually and cumulatively, demonstrate[s] deliberate indifference on behalf of the school district to the harassment faced by Plaintiffs." (Doc. 133 at 19.) This conduct includes Defendants San Roman, Ortiz, and J. Malano's failure to notify school administration about the bus incident for almost a week, Defendant J. Malano's inappropriate laughter in front of students, and Defendant Willden's choice to impose less than the minimum discipline called for by the Board's policy. (*Id.* at 19–20.) Plaintiffs advanced similar arguments in their previous brief regarding Title IX liability and to establish deliberate indifference under § 1983 (*see* Docs. 114, 133), and they offer no additional evidence or controlling authority that meets the standard of a motion to reconsider for their claims here. The Court did not misapprehend controlling law, and its decision on this issue stands.

Second, Plaintiffs contend that there is "evidence demonstrating a policy of deliberate indifference with regard to proper training concerning preventing bullying and hazing in high school sports." (*Id.* at 16.) Plaintiffs' base their claim on *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007). In *Simpson*, the plaintiffs showed that the University of Colorado at Boulder's [CU] "recruiting efforts involved showing [football] recruits a 'good time' by pairing them with female 'Ambassadors' to show them around campus, and at least some of these recruits had been promised an opportunity [to] have sex." *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1337–38 (D. Kan. 2008); *see also Simpson*, 500 F.3d at 1173. "At the time of the assaults [on the plaintiffs], there were a variety of sources of information suggesting the risks that sexual assault would occur if recruiting was not adequately supervised[,]" including information on "a prior sexual assault by [CU] recruits after which a local district attorney had

11

initiated a meeting with top CU officials, telling them CU needed to develop policies for supervising recruits and implement sexual-assault-prevention training for football players." *C.T.*, 562 F. Supp. 2d at 1338 (citing *Simpson*, 500 F.3d at 1173). "Yet CU did little to change its policies or training following that meeting." *Id.* (quoting *Simpson*, 500 F.3d at 1173). "The coaching staff was informed of sexual harassment and assault by players, and responded in ways that were more likely to encourage than eliminate such misconduct." *Id.* (citing *Simpson*, 500 F.3d at 1173–74). In noting the egregious conduct by CU officials in "sanction[ing], support[ing], even fund[ing], a program . . . that, without proper control, would encourage young men to engage in opprobrious acts[,]" the Tenth Circuit "concluded that Title IX liability can exist 'when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary . . . .'" *Id.* (quoting *Simpson*, 500 F.3d at 1178).

In *Simpson*, the Tenth Circuit noted that "[t]he central question in this case is whether the risk of such an assault during recruiting visits was obvious. In our view, the evidence could support such a finding." *Id.* (quoting *Simpson*, 500 F.3d at 1180–81). The relevant evidence included the prior assaults within this recruiting program, the football coach's knowledge of those assaults and the continued risk, and the fact that "athletic department personnel knew that sincere efforts were not being made to establish a football team culture that would prevent sexual assaults." *Id.* (citing *Simpson*, 500 F.3d at 1181–84). "Thus, the Tenth Circuit reasoned, . . . a jury could infer that the need for training of player-hosts was so obvious, and the inadequacy so likely to result in Title IX violations, that the coach could reasonably be said to have been deliberately indifferent to the need for training." *Id.* (quoting *Simpson*, 500 F.3d at 1184–85 (alterations in original) (internal quotation omitted)).

Here, Plaintiffs allege that the school district failed to provide adequate training on preventing bullying and hazing in high school sports. (Doc. 133 at 16.) In support, Plaintiffs contend that there is "evidence that such assaults had in fact occurred previously on other bus rides." (Doc. 133 at 17 (citing Am. Compl. ¶ 55; Doc. 115, Ex. 8 at 1–2).) Noticeably absent from Plaintiffs' brief and supplemental exhibits, however, is any assertion or evidence that school officials had notice of previous assaults. Plaintiffs also argue that school officials were on notice that bullying and hazing were concerns in high school sports and were deliberately indifferent to the need for proper training. (Doc. 133 at 16, 21–23.) "Even accepting these allegations as true and viewing the summary judgment record in the light most favorable to plaintiffs, however, the facts of this case do not fall within the framework of the Tenth Circuit's holding in *Simpson*." *C.T.*, 562 F. Supp. 2d at 1339.

"The deliberate-indifference-to-obvious-need-for-training standard adopted by the Tenth Circuit in *Simpson* for Title IX claims is confined to circumstances where a federal funding recipient sanctions a specific program that, without proper control, would encourage sexual harassment and abuse such that the need for training or guidance is obvious." *Id.* "In that situation, the failure amounts to an official policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of the program." *Id.* at 1339–40. Here, Plaintiffs point to both the football program and to general teasing and bullying by various students and staff that occurred after the incident on the bus.[2] Even viewing the facts in a light most favorable to Plaintiffs, the incidents here do not rise to the level of egregiousness and actual notice required by *Simpson*. The Court denies Plaintiffs' motion to alter or amend on this issue.

---

[2] Dr. Susan Lipkins calls this teasing and bullying by peers, teammates, and school personnel the "second hazing." (*See* Doc. 134, Ex. 1 at 5.)

## IV. Conclusion

The Court has reviewed the facts—including the newly submitted evidence—in a light most favorable to Plaintiffs and finds that Plaintiffs have failed to establish the Court previously misapprehended the facts, Plaintiffs' position, or the controlling law.

**THEREFORE**,

**IT IS ORDERED** that Plaintiffs' Motion to Alter or Amend the Judgment (Doc. 133) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**